| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | FOR ONLINE PUBLICATION ONLY |

IRENE OTERO,

                       Plaintiff,

      - versus -

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,[1]

                       Defendant.

MEMORANDUM
AND ORDER
12-CV-4757

A P P E A R A N C E S

        LAW OFFICE OF HARRY J. BINDER AND CHARLES E. BINDER, P.C.
        60 East 42 Street, Suite 520
        New York, New York 10165
By:    John J. Moran
        *Attorney for Plaintiff*

        LORETTA LYNCH
        United States Attorney
        Eastern District of New York
        271 Cadman Plaza East, 7th Floor
        Brooklyn, New York 11201
By:    Christian Kelly[2]
        Seth Eichenholtz
        *Attorney for Defendant*

JOHN GLEESON, United States District Judge:

        Irene Otero brings this suit pursuant to 42 U.S.C. § 405(g) challenging the determination of the Commissioner of Social Security ("Commissioner") that she was not entitled to Social Security Disability Insurance ("SSDI") under Title II of the Social Security Act, 42 U.S.C. § 423(d) (the "Act"). Otero moves for a remand solely for the calculation for benefits or, in the alternative, that the case be remanded for a new hearing. The Commissioner cross-moves for a judgment on the pleadings. For the reasons that follow, the Commissioner's decision is

---

[1]     The Clerk is directed to substitute Carolyn W. Colvin, Acting Commissioner of Social Security, for defendant Michael J. Astrue, and amend the caption accordingly. *See* Fed. R. Civ. P. 25(d).

[2]     On consent, law student intern Christian Kelly argued the case on behalf of the Commissioner.

reversed, and the case is remanded to the Commissioner for additional proceedings in accordance with this order.

BACKGROUND.

A.  *Facts and Procedural History*

    1.  *Application for SSDI*

Irene Otero was born on June 28, 1952. On December 18, 2009, she applied for SSDI benefits alleging that she became unable to work on or about June 26, 2009 – at age 57 – on account of polymyalgia rheumatica (muscular & bone pain) and vision cataracts and myopia.[3] Compl. ¶ 4, ECF No. 1; R 114. Prior to seeking disability insurance, she had worked in the same job since January 1999 doing "data entry" for the New York City Board of Education. R. 115-16. In this role, she was required to sit for six hours and "lift[] and carr[y] heavy files" that weigh up to fifty pounds occasionally and ten pounds frequently. R. 116. She was able to complete her job without difficulty until right before her disability application.

In January 2010, Otero completed a "Function Report" for the New York State Office of Temporary and Disability Assistance, the state agency responsible for obtaining information in connection with her application for disability benefits. In this report, she indicated that she first began to experience pain in April 2009 and that the pain began to affect her activities in August 2009. R. 131. In a "Pain Questionnaire" she reported pain in her "toes, feet, legs[,] my back and hands and fingers, head, eyes, jaws, arms, knees, muscles and bones. Neck and shoulder." *Id.* She indicated that she experiences this pain "every day" and that standing, walking, sitting, bending, reading, or using hands and fingers brings on the pain, which then lasts

---

[3] The background facts set forth herein are taken from the administrative record (referred to herein as "R."), which includes, *inter alia*, plaintiff's medical records and the transcript of the hearings held before the ALJ, at which Plaintiff testified.

about 20 minutes.  She checked "yes" to the question "Does the medication [Prednisone] relieve the pain?" and indicated that relief can last up to 7 hours.  R. 132.

On February 5, 2010 the state agency sent an "Electronic Request for Medical Advice" to a medical consultant, Dr. Marasigan, asking the consultant to "review [the evidence in the file] and provide RFC or advise."  R. 319.  In response, Dr. Marasigan indicated that "weakness of the limbs [is] relieved by Prednisone," and advised that the agency "should have current physical findings," prior to making a disability determination.  *Id.*

On March 8, 2010, a "single decision maker" completed a physical residual functional capacity assessment ("RFC") based on medical record in the file through January 2010, R. 325.  The RFC indicated that the medical consultant's "request for more case development" is "not being followed," since the evidence in the file indicates that Otero's condition has "responded to med[ical] therapy."  R. 325.  Accordingly, the RFC indicated that Otero can sit for 6 hours and stand for 2 hours; that she has an unlimited ability to push/pull; and she can lift 20 pounds occasionally and 10 pounds frequently.  R. 322.  The RFC also indicated that Otero has no manipulative limitations in handling, reaching, or fingering.  In support of this assessment, the RFC indicated that "[her] last few physical exams . . . revealed that pain and discomfort has being [sic] significantly relieved by Predisone [sic] . . . [and] her neurological and motor exams have all been normal in recent exams from her [treating] sources. "  R. 322.  The RFC did not give any weight to Otero's self-reports of pain.  It concluded that Otero's statements about eye pain when reading and difficulty holding a telephone due to hand pain were "not . . . credible based on objective medical evidence in file."  R. 324.

Ms. Otero's application for disability was denied on March 8, 2010.  R. 62.

2.  *Otero Supplements the Record*

On April 8, 2010, counsel for Otero supplemented the record with a Rheumatoid Arthritis Impairment Questionnaire dated December 10, 2009 from Otero's treating physician, Dr. Marianna Gertsberg. The Rheumatoid Arthritis questionnaire listed Otero's diagnosis as polymyalgia rheumatica. Dr. Gertsberg indicated that the severity of Otero's pain was at a level 7, indicating "moderately severe" pain and that the pain "interferes with [Otero's] attention and concentration constantly." R. 334, 335. Dr. Gertsberg opined that Otero can sit for no more than 2 hours and stand/walk for no more than 3 hours in an eight-hour work day. Dr. Gertsberg also indicated that Otero can occasionally lift and carry up to 5 pounds but can never lift or carry any more than that. She also indicated that Otero should not be required to push, pull, kneel, bend or stoop.

In June 2010, Otero further supplemented the record with 114 pages of medical reports from Dr. Gertsberg for the period from September 17, 2009 to June 7, 2010. In these medical reports, Dr. Gertsberg noted laboratory results showing elevated C-reactive protein ("CRP") and erythrocyte sedimentation rate ("ESR"), R. 483, which is indicative of inflammation in the body. Pl.'s Memo. of Law 2, n.8, ECF No. 14. The medical reports indicated that Gertsberg adjusted the dose of Prednisone when Otero's symptoms flared up, *see* R. 557, and tapered the dosage when the symptoms lessened, *see* R. 571.

3. *The ALJ Hearing*

A hearing was held before ALJ Michael Cofresi on October 19, 2010.[4] Otero testified at the hearing. First, she described her job duties as "a family worker at the school," where she would "enter data entry in the computer. I would do some filings. I would have to make copies of the cases on the students. I would also have to take the cases back and forth to the

---

[4] Prior to the hearing, Otero's counsel submitted a letter to the ALJ summarizing "the medical evidence and theory of disability," R. 455

4

district." R. 14.  She indicated that she asked to retire from the job because she "was getting terrible headaches, pain in [her] eyes, [her] hands would get stiff . . . . and it was hard for [her] to stand up and walk around . . ."  She testified she did not think she could sit for more than an hour, and that she could not stand for more than half an hour without changing positions.  R. 20-21.  During the hearing, she got up to walk around on account of stiffness.

With respect to her functioning at home, Otero testified that her husband helped her clean, cook, and do the shopping, and that she had to hold onto the shopping cart to avoid falling. R. 22.  She indicated that, "because of the inflammation," she was sometimes unable to lift her arms to wash her hair in the shower.  She testified that she could not read or watch T.V. for more than a half an hour without getting "headaches and pain in the eye." R. 23.  She also testified that she stopped driving and she doesn't take public transportation or go anywhere by herself because of pain and fear of falling. R. 22-23.

4.  *Otero Again Supplements the Record*

On November 1, 2010, Otero's counsel sent a narrative report from Dr. Gertsberg dated October 21, 2010 to the Office of Disability Adjudication and Review.  In this letter, Dr. Gertsberg summarized her medical opinions from her December 2009 Rheumatoid Arthritis Questionnaire and stated that her assessment from that period remains valid.  R. 607.

5.  *The ALJ's Decision*

In a decision dated November 16, 2010, ALJ Cofresi found Otero not disabled.  Applying the Commissioner's five- step process for assessing disability applications, he determined that Otero has the following medically determinable impairments: a history of osteoporosis, blurred vision, and polymyalgia rheumatica.  However, at step two of the analysis, he concluded that these medical impairments were "not severe within the meaning of the Social

5

Security Regulations," noting that her pain has "been alleviated by appropriate dosages of Prednisone" and that "she has been capable of reading, watching television, and performing fine and gross visual activities." R. 41.

Next, assuming *arguendo* that Otero did have severe impairments, the ALJ went on to consider steps four and five of the disability analysis.[5] He concluded that she has the RFC to "perform the full range of sedentary work as defined in [the regulations]," R. 42, which is defined as work "involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools . . . [and] walking and standing . . . occasionally," 20 C.F.R. 404.1567(a).

In reaching this conclusion, the ALJ gave no weight to Otero's testimony about her symptoms because he found it not credible. In support of this adverse credibility determination, the ALJ noted that "in April 2009, results on physical examination . . . were normal," and that it "was not until September 2009 that [Otero] had developed symptoms related to fibromyalgia [sic] rheumatic," R. 42. "[T]he claimant's assertions clearly lack corroboration and, therefore, credibility." Thus, the ALJ concluded that Otero's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." *Id.*

In reaching his RFC assessment, the ALJ gave Dr. Gertsberg's opinion "no probative value," concluding that the treating doctor's report lacked "support in the form of substantial evidence." He found the treating physician's findings as to Otero's limited function were inconsistent with her medical report which also indicated that Otero did not have an

---

[5] At the third step of the review, the ALJ determined that, based solely on medical evidence, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 of the regulations. R. 42. Otero does not challenge this determination.

6

"abnormal gait or posture, loss of range of motion, loss of grip strength, tenderness, swelling, joint instability, muscle spasm, crepitation or trigger points." *Id.* 43-44.

      6.   *Otero Supplements the Record Again*

On May 12, 2011, counsel for Otero enclosed "[m]edical records dated 11/28/2009 to 10/16/2010 from Sawat Losoponkul M.D." R. 458.

      7.   *The Appeals Council Decision*

In a letter dated August 16, 2012, Otero's counsel sent a letter to the Appeals Council asking that the ALJ decision be vacated because "the ALJ failed to follow the treating physician rule, failed to acknowledge the severity of her conditions, failed to set forth an appropriate residual functional capacity (RFC), and failed to acknowledge the demands of her past relevant work." R. 149. On August 22, 2012 the Appeals Council denied Otero's request for review, making the ALJ's decision the final decision of the Commissioner.

Otero filed suit in this Court pursuant to 42 U.S.C. § 405(g) challenging the determination of the Commissioner. She argues the Commissioner's decision should be reversed for three reasons. First, she contends the ALJ erred in finding Otero not disabled at step two of the framework outlined above by concluding that her medical impairments were not severe. Next, Otero challenges the ALJ's alternative holding, arguing that ALJ failed to apply the treating physician rule when arriving at Otero's RFC. Finally, Otero argues that the ALJ applied the incorrect legal standard when assessing her credibility. I address each of these arguments in turn.

## DISCUSSION

A.    *Standard of Review*

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The scope of review of a Social Security

7

disability determination involves two levels of inquiry. First, the court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the court must decide whether the determination is supported by substantial evidence. *See Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The Commissioner's findings are conclusive if supported by substantial evidence, even in those cases where the reviewing court might have reached a different conclusion on *de novo* review. *See Beauvoir v. Charter*, 104 F.3d 1432, 1433 (2d Cir. 1997) (citation omitted).

B.   *Eligibility Standard for Social Security Disability Benefits*

Disability" is defined to mean the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," 42 U.S.C. 423(d)(1)(A). SSA regulations prescribe a five-step process for evaluating disability claims:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [per se] disabled . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*DeChirico v. Callahan*, 134 F.3d 1177, 1179-80 (2d Cir.1998) (internal alterations omitted).

The applicant bears the burden of proof in the first four steps of the sequential inquiry; the Commissioner bears the burden in the last. *Id.*

C. *Application*

1. *Step Two: The "Severity" of Otero's Impairments*

The ALJ's conclusion that Otero's three impairments – a history of osteoporosis, blurred vision, and polymyalgia rheumatics – are not severe within the meaning of the Social Security regulations is indefensible. The evaluation of whether a particular impairment is severe "requires an assessment of the functionally limiting effects of an impairment(s) on an individual's ability to do basic work activities." Social Security Ruling 96-3p, *Policy Interpretation Ruling Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determination Whether a Medically Determinable Impairment is Severe*, 1996 WL 374181, *2 (1996). The regulations define basic work activities to include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching and carrying, or handling. 20 C.F.R. § 404.1521(b).

It has been emphasized that step two of the disability evaluation poses a low threshold burden on claimants. In *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), the Second Circuit, joining seven other circuits, held that this step "may do no more than screen out *de minimis* claims." *Id.* (citations omitted). If the disability claim rises above a *de minimis* level, then the remaining analysis of the claim at steps three through five must be undertaken. *Id.*

There is significant documentary support for the claim that Otero – a claimant of relatively advanced age with a significant work history – suffered from, *inter alia*, arm, shoulder and head pain that was constant and moderately severe; limited range of motion in her arms and shoulders; and tenderness in her knees and spine. The ALJ's factual finding that Otero's symptoms had "been alleviated by appropriate dosages of Prednisone," R. 41, failed to consider

9

whether they were alleviated on a sustained basis or whether the "alleviated" symptoms affected Otero's ability to engage in basic work activities. For that and other reasons, there is no justification for cynical conclusion that Otero's symptoms are *de minimis.* On remand, the Commissioner is directed to consider, among all other relevant factors, the extent to which the medication alleviates symptoms on a continuous basis, as well as whether Otero is able to perform basic work activities while taking medication.

2. *Steps Four & Five: Residual Functional Capacity*

Since the ALJ went on to consider the weight to be accorded to the treating physician at step four in its alternative holding, I also evaluate the ALJ's alternative holding for legal error and for substantial evidence.

a. *Treating Physician Rule*

There is no dispute that Dr. Gertsberg is a rheumatologist that treated Otero every two to three months for over a year. The regulations define "treating source" as a claimant's "own physician, psychologist, or other acceptable medical source who provides [a claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502. As Otero's treating physician, Dr. Gertsberg's opinion as to the nature and severity of Otero's impairments must be given "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id*. § 404.1527(c)(2); *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993). When a treating physician's assessment is not accorded controlling weight, the ALJ must determine what weight it deserves, and SSA regulations require that an ALJ consider "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion;

(iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist.'" *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)); *see also* 20 C.F.R. 404.1527(c)(2) ("When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion.) The ALJ may discount, or even disregard entirely, the opinion of the treating physician where good cause is shown based on an assessment of these factors.

   The ALJ's conclusion that Dr. Gertsberg's opinion is to be given "no probative weight" is not supported by substantial evidence and must be reconsidered on remand. Although an ALJ is not required to discuss each piece of evidence he or she considers, *see Barringer v. Comm'r of Soc. Sec.*, 358 F .Supp.2d 67, 78–79 (N.D.N.Y.2005), the record in this case does not permit me to conclude that the ALJ considered, as required by the regulations, the treating physician's year-long relationship with Otero, that Dr. Gertsberg is a specialist in rheumatology, or that lab results showed elevated sedimentation rate (ESR), a blood test indicative of inflammation. This was error; as set forth above, the ALJ must consider the frequency of examination and the length of the treatment relationship, the evidence in support of the opinion, and the fact that the treating physician is a specialist.

   Even if I were satisfied that the ALJ considered the required factors in his assessment of Dr. Gertsberg's opinions, I would nonetheless remand for an independent reason. The ALJ concluded that Dr. Gertsberg's opinion was not entitled to any weight because it contained inconsistencies with the rest of the medical evidence. However, this conclusion is not supported by substantial evidence. The only inconsistencies the ALJ pointed to is Gertsberg's conclusion that Otero did not have an "abnormal gait or posture, loss of range of motion, loss of

grip strength, tenderness, swelling, joint instability, muscle spasm, crepitation or trigger points." The ALJ concluded that such findings were inconsistent with Dr. Gertsberg's findings that Otero had a severely limited her ability to stand, sit, bend, manipulate items, push, pull or carry more than five pounds.  However, merely pointing to the absence of certain symptoms cannot support an ALJ's decision to disregard a treating physician's opinion.  The ALJ must be able to point to some basis by which a reasonable person can conclude that someone suffering from polymyalgia rheumatica would be expected to exhibit "abnormal gait or posture, loss of range of motion, loss of grip strength, tenderness, swelling, joint instability, muscle spasm, crepitation or trigger points."  Since there is nothing in the record that would permit a reasonable person to make such an inference, I conclude that the decision to accord Dr. Gertsberg's opinion no probative weight is not supported by substantial evidence.

On remand, the ALJ is directed to make findings regarding the physical demands of the claimant's past relevant work and to obtain adequate "factual information about those work demands which have a bearing on the medically established limitations." Security Ruling 82–62, *Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work*, *In General* ("SSR 82–62"), 1982 WL 31386, at *3 (1982).  Only then can the ALJ determine whether the claimant has the ability to meet the demands of her past relevant work despite her impairments.

b.  *Credibility*

An ALJ must take into account subjective complaints of pain in his disability analysis if the complaints can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. §§ 404.1529(a).  If an ALJ rejects a claimant's testimony as not credible, the reasons for doing so must be stated with sufficient particularity to enable a

12

reviewing court to determine whether those reasons were legitimate, and whether the determination is supported by substantial evidence. *Crysler v. Astrue*, 563 F.Supp.2d 418, 440 (N.D.N.Y. 2008). In assessing credibility, the regulations require the ALJ to consider the following factors: (1) daily activities; (2) location, duration, frequency and intensity of any symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of any medications taken; (5) other treatment received; and (6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi)).

The reasons the ALJ did cite in support of his adverse credibility assessment are not supported by substantial evidence. The ALJ noted that "in April 2009, results on physical examination . . . were normal," and that it "was not until September 2009 that [Otero] had developed symptoms related to fibromyalgia[6] [sic] rheumatic," *Id.* First, the ALJ's reasoning appears to be entirely consistent with Otero's allegations with respect to onset date of her disability. In a "Function Report" Otero filed during her initial claim for disability, she indicated that her pain first began to affect her activities in August 2009. R. 131. I fail to see how a normal physical exam in April 2009 is evidence of an exaggeration of symptoms that began in earnest months later in August 2009. Thus, I conclude that the ALJ's reliance on "normal" findings in April 2009 as evidence of a lack of credibility on Otero's part was error.

Additionally, the ALJ concluded that Otero's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." *Id.* The Seventh Circuit rejected this boilerplate language noting that it "implies that ability to work is determined first and is then used to determine the claimant's credibility." *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). I fully agree with the Seventh Circuit's assessment. The assessment of a claimant's

---

[6] In fact, Otero complains of polymyalgia rheumatica, not fibromyalgia rheumatica.

13

ability to work will often depend on the credibility of her statements concerning the intensity, persistence and limiting effects of her symptoms. Thus, it makes little sense to decide on a claimant's RFC prior to assessing her credibility. It merely compounds the error to then use that RFC to conclude that a claimant's subjective complaints are unworthy of belief.

D.     *Conclusion*

   For the foregoing reasons, the plaintiff's motion for judgment on the pleadings solely for the calculation of benefits is denied. I cannot conclude on this record that the only reasonable conclusion on remand will be an award of benefits. The Commissioner's motion for judgment on the pleadings affirming the denial of benefits is denied as well. The case is remanded to the Commissioner for further proceedings consistent with this opinion. The ALJ is directed to offer the claimant the opportunity for a new hearing and to permit the claimant to supplement the record with updated evidence. At a new hearing, the ALJ is directed to reevaluate the claimant's credibility and the weight to be accorded to the treating physician's assessments in light of the updated record. I respectfully request the Commissioner to reassign the case on remand to an ALJ other than the one who heard the case initially. The Clerk of the Court is requested to enter judgment accordingly and to close this case.

   So ordered.

                John Gleeson, U.S.D.J.

Dated: March 19, 2013
   Brooklyn, New York